IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARK SKEETE,

                            CIVIL ACTION NO.

v.                         1:10-CV-2709-JEC

ENTERTAINMENTSTUDIOS HOME
ENTERTAINMENT, INC., CF
ENTERTAINMENT, INC., ANCHOR BAY
ENTERTAINMENT, LLC, AND
TWENTIETH CENTURY FOX HOME
ENTERTAINMENT, LLC, AND JOHN
DOES 1-20,

        Defendant.

## **ORDER AND OPINION**

This case is before the Court on defendant Twentieth Century Fox Home Entertainment, LLC's Motion to Dismiss [10], defendant Twentieth Century Fox Home Entertainment, LLC's Request for Judicial Notice [11], plaintiff's Motions for Judgment by Default and Entry of Default Against CF Entertainment, Inc. [16], [24], [38] and [50], plaintiff's Motions for Judgment by Default and Entry of Default Against Anchor Bay Entertainment, LLC [17], [21], [36] and [52], defendants EntertainmentStudios Home Entertainment, Inc., CF Entertainment, Inc., and Anchor Bay Entertainment LLC's Motion to Dismiss [18], plaintiff's Motion to Transfer [25], plaintiff's

Motion to Strike [27], plaintiff's Motions for Judgment by Default
and Entry of Default Against EntertainmentStudios Home
Entertainment, Inc. [32], [37] and [51], plaintiff's Motion for Rule
11 Sanctions [33], and plaintiff's Objection to Requests for Leave
of Absence and/or Reconsideration [49].

The Court has reviewed the record and the arguments of the
parties and, for the reasons set out below, concludes that defendant
Twentieth Century Fox Home Entertainment, LLC's Motion to Dismiss
[10] should be **GRANTED in part** and **DENIED in part**, defendant
Twentieth Century Fox Home Entertainment, LLC's Request for Judicial
Notice [11] should be **GRANTED**, plaintiff's Motions for Judgment by
Default and Entry of Default Against CF Entertainment, Inc. [16],
[24], [38] and [50] should be **DENIED**, plaintiff's Motions for
Judgment by Default and Entry of Default Against Anchor Bay
Entertainment, LLC [17], [21], [36] and [52] should be **DENIED**,
defendants EntertainmentStudios Home Entertainment, Inc., CF
Entertainment, Inc., and Anchor Bay Entertainment LLC's Motion to
Dismiss [18] should be **GRANTED in part** and **DENIED in part**,
plaintiff's Motion to Transfer [25] should be **DENIED**, plaintiff's
Motion to Strike [27] should be **DENIED**, plaintiff's Motions for
Judgment by Default and Entry of Default Against
EntertainmentStudios Home Entertainment, Inc. [32], [37] and [51]

2

should be **DENIED**, plaintiff's Motion for Rule 11 Sanctions [33] should be **DENIED**, and plaintiff's Objection to Requests for Leave of Absence and/or Reconsideration [49] should be **DENIED**.

## BACKGROUND

This case arises out of a copyright dispute. In 2003, plaintiff began filming the documentary "Crunk Kings" about local Atlanta rap artists Lil Jon & the Eastside Boyz. (Compl. [1] at ¶ 18.) After completing the documentary and an accompanying soundtrack, plaintiff began researching distribution options for his film. (*Id.* at ¶ 16.) Through his research, plaintiff became acquainted with defendant EntertainmentStudios Home Entertainment, Inc. ("ESHE"). (*Id.*) ESHE is in the business of distributing movies and TV shows via DVDs and internet programming. (*Id.* at ¶ 12.)

In December 2005, plaintiff entered into negotiations with ESHE regarding a distribution deal for "Crunk Kings." (*Id.* at ¶ 19.) Shortly thereafter, plaintiff and ESHE executed a Term Sheet regarding "Crunk Kings." (Compl. [1] at ¶ 20 and Term Sheet, attached to Def.'s Mot. to Dismiss [10] at Ex. 1.) The Term Sheet purports to provide ESHE with worldwide distribution rights to

3

"Crunk Kings" for fifteen years.[1]  (*Id.*)  It states further that
"this deal memo is binding and will be . . . captured in a more
comprehensive long form agreement." (*Id.*)

While negotiations regarding the long form agreement were
ongoing, plaintiff sent ESHE a master copy of "Crunk Kings."
(Compl. [1] at ¶¶ 22-23,25.)  According to plaintiff, ESHE
represented that it needed the master copy in order to meet the
projected release date for the DVD.  (*Id.*)  Without providing any
detailed explanation, plaintiff summarily states that ESHE's
representations on this point were fraudulent.  (*Id.* at ¶ 22-23.)
Plaintiff alleges that his relationship with ESHE changed
dramatically as soon as ESHE received the master copy.  (*Id.* at ¶
24.)  In particular, plaintiff claims that after receiving the copy,
ESHE stated that it was not interested in developing any other
projects with plaintiff and that it viewed the "Crunk Kings" project
simply as a "test."  (*Id.*)

In spite of ESHE's allegedly fraudulent tactics, negotiations
on the long form agreement continued.  (Compl. [1] at ¶¶ 21, 25-26.)
In April 2006, ESHE sent plaintiff the first of many proposed Long
Form Licence Agreements.  (Proposed Long Form License Agreement,

---

[1]  The Court may consider a document that is attached to a
motion to dismiss as long as the document is central to the
plaintiff's claim and undisputed.  *Day v. Taylor*, 400 F.3d 1272,
1276 (11th Cir. 2005).  The Term Sheet meets both requirements.

4

attached to Def.'s Mot. to Dismiss [10] at Ex. 2.)  Plaintiff claims that he was expecting to receive a distribution agreement as opposed to the licensing agreement that was sent to him.  (Compl. [1] at ¶ 21.)  Nevertheless, in the following months plaintiff continued to negotiate with ESHE as to the terms of the proposed Long Form Licensing Agreement.  (*Id.* at ¶¶ 25-26.)

In July 2006, one of plaintiff's lawyers sent ESHE an edited version of the Long Form Licensing Agreement.  (Revised Long Form Licensing Agreement, attached to Def.'s Mot. to Dismiss [10] at Ex. 3.)  ESHE responded by faxing plaintiff a revised version of the Long Form Licensing Agreement accompanied by a Short Form Agreement. (Second Revised Long Form License Agreement, attached to Def.'s Mot. to Dismiss [10] at Ex. 4.)  ESHE subsequently sent plaintiff an email requesting that he either sign the agreements or face the possibility of legal proceedings to recoup the monies that had been advanced to plaintiff under the Term Sheet, as well as have the release of "Crunk Kings" cancelled.  (July 24, 2006 Email, attached to Def.'s Mot. to Dismiss [10] at Ex. 5.)

Upon his receipt of ESHE's email, plaintiff signed and returned the Short Form Agreement.  (Short Form Agreement, attached to Def.'s Mot. to Dismiss [10] at Ex. 7.)  Plaintiff did not sign the Long Form Agreement.  (Compl. [1] at ¶ 13, 21.)  However, the Short Form

5

Agreement that plaintiff signed referenced the Long Form Agreement, stating that:

> forgoing and certain related additional rights are more particularly described in the License Agreement, and this Short Form License is subject to the terms and conditions of, that certain License Agreement dated as of July, 2006, between the Licensor and the Licensee (the "License Agreement").

(Short Form Agreement [10] at Ex. 7.)  In addition, the Short Form Agreement provided that it would "commence on the date of the [Long Form] License Agreement and shall continue for the period set forth in the License Agreement." (*Id.*)

On the same day that plaintiff returned the signed Short Form Agreement, ESHE sent plaintiff an email explaining that it had neglected to provide a signature page for the Long Form License Agreement, and indicating that plaintiff needed to sign that as well. (July 26, 2006 email, attached to Pl.'s Resp. to Def.'s Mot. to Dismiss [15] at Ex. C.)  ESHE then faxed the signature page to plaintiff. (*Id.*)  Two days later, ESHE sent plaintiff another email requesting that he "initial each page [of the Long Form License Agreement] and . . . sign and have notarized the short form agreement" in order to "officially execute the agreement." (*Id.* at Ex. D.)

Plaintiff never returned the signature page of the Long Form Agreement, as requested by ESHE.  According to plaintiff, ESHE's

AO 72A
(Rev.8/82)

fraud had become "crystal clear" at this point. (Compl. [1] at ¶ 26.) The fraud apparently lay in the fact that ESHE was seeking a "film acquisition agreement and not a pressing, distribution and marketing agreement." (*Id.*) Nevertheless, plaintiff continued negotiations with ESHE concerning the terms of the proposed Long Form License Agreement over the next two months. (Pl.'s Resp. [15] at Exs. F & G.) Those negotiations resulted in ESHE sending plaintiff at least two more versions of the Long Form Licensing Agreement, which plaintiff again refused to sign. (*Id.*)

ESHE began distributing and selling "Crunk Kings" in August 2006, with the assistance of defendants Anchor Bay, LLC ("Anchor Bay") and Twentieth Century Fox, LLC ("Fox").[2] (Compl. [1] at ¶ 29.) Unsatisfied with the royalty statements that ESHE sent to him, plaintiff had his counsel make a series of inquiries in November and December 2006 regarding various accounting issues. (Def.'s Mot. to Dismiss [10] at Exs. 8-11.) These inquiries focused solely on ESHE's accounting for royalties. (*Id.*) They did not raise any issues concerning the allegedly improper or unauthorized distribution of "Crunk Kings." (*Id.*)

---

[2] The other named defendants are allegedly part of a "racketeering enterprise" that exploited advertising fees received in connection with "Crunk Kings." (Compl. [1] at ¶¶ 15, 69-83.)

AO 72A
(Rev.8/82)

In March 2007, plaintiff hired an accounting firm to audit ESHE's records regarding "Crunk Kings." In response to the audit, ESHE produced a clean version of the Revised Long Form License Agreement as it existed when plaintiff signed the Short Form Agreement. (Pl.'s Resp. [15] at Ex. J and Def.'s Mot. to Dismiss [10] at Ex. 4.) This document includes the signed Short Form Agreement as an exhibit, but omits the signature page of the Long Form License Agreement. (*Id.*) Plaintiff claims that ESHE's failure to include the signature page to the Long Form License Agreement amounts to fraud. (Compl. [1] at ¶¶ 31-32.)

Nearly two years after the audit, plaintiff filed a complaint against ESHE and the other defendants in the Northern District of Georgia, and the case was assigned to Judge Vining. (*Id.* at 3.) However, plaintiff's counsel voluntarily dismissed that action after defendants filed a motion to dismiss. (*Id.*) According to plaintiff, his counsel filed the motion to voluntarily dismiss over his "vociferous objections." (*Id.*) With the assistance of new counsel, plaintiff sought to withdraw his motion to dismiss and to file an amended complaint. (*Id.* at Ex. A.) Judge Vining denied plaintiff's request as moot, holding that the voluntary dismissal was self-executing.[3] (Compl. [1] at Ex. A.)

_____

[3]   In his order, Judge Vining invited plaintiff to file a motion to vacate the dismissal under Rule 60(b), although he

Following the dismissal of plaintiff's action, defendants filed a motion for attorneys' fees based on the Copyright Act and a provision in the Revised Long Form License Agreement that accompanied the Short Form Agreement. (*Id.*) In denying the request, Judge Vining briefly discussed defendants' argument that plaintiff had executed the Long Form License Agreement by signing the Short Form Agreement. (*Id.* at 7.) While he explicitly refrained from ruling on the issue, Judge Vining noted that it was "highly unusual to argue that a signed exhibit to a contract is sufficient to validate the unsigned contract itself, especially since . . . the Long Form License Agreement has a signature page." (*Id.*) Ultimately, Judge Vining declined to award attorneys' fees because plaintiff had voluntarily dismissed his claims. (*Id.*)

Plaintiff subsequently renewed many of his claims against defendants by filing the present *pro se* action. All of the defendants have filed motions to dismiss or transfer plaintiff's renewed action. (Defs.' Mots. to Dismiss [10] and [18].) Defendants have also filed related motions requesting that the Court take judicial notice of plaintiff's complaint in the first action.

---

informed plaintiff that there was a circuit split concerning whether or not a litigant may seek relief from a voluntary dismissal under Rule 60. (Compl. [1] at Ex. A.) Siding with the Eighth Circuit, Judge Vining subsequently denied plaintiff's motion to vacate under Rule 60(b). (*Id.*)

9

(Defs.' Mots. for Judicial Notice [11] and [19].)  In response, plaintiff has filed a motion to strike and several motions for default against various defendants.  (Pl.'s Mot. to Strike [27] and Mots. for Default [16], [17], [21], [24], [32], [36], [37], [38], [50], [51], and [52].)  In addition, plaintiff has filed a motion for Rule 11 Sanctions and a motion to transfer this case to Judge Vining.  (Pl.'s Mot. to Transfer [25] and Mot. for Sanctions [33].) All of these motions are presently before the Court.[4]

## DISCUSSION

## I.  Judicial Notice

In connection with their motions to dismiss, defendants have asked the Court to take judicial notice of plaintiff's complaint in the previous action that was dismissed by Judge Vining.  (Defs.' Mots. for Judicial Notice [11] and [19].)  A litigant's filings in a previous case are appropriate for judicial notice.  *See Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010)(noting that the district court properly took judicial notice of documents filed by the plaintiff in a prior case) and FED. R. EVID. 201(b)(judicial notice is proper where the facts are "not subject to reasonable dispute" and "capable of accurate and ready determination by resort

---

[4]    Plaintiff has also filed a motion objecting to defense counsel's request for a leave of absence [49].  There is no basis for denying counsel's request for a leave of absence.  Plaintiff's motion [49] is therefore **DENIED**.

to sources whose accuracy cannot reasonably be questioned"). Moreover, plaintiff does not oppose defendants' request. *See* LR 7.1(B), NDGa. ("[f]ailure to file a response shall indicate that there is no opposition" to a motion). The Court does **GRANTS** defendants' motions concerning judicial notice [11] and [19].

## II.  Motions to Dismiss

### A.  Standard

In deciding a motion to dismiss, the Court assumes that all the allegations in the complaint are true and construes all the facts in favor of the plaintiff. *Scott v. Taylor,* 405 F.3d 1251, 1253 (11th Cir. 2005). That said, in order to survive a motion to dismiss a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has "facial plausibility" when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B.  Counts I-III: Copyright Infringement

In Counts I, II, and III of the complaint, plaintiff asserts claims for copyright infringement. (Compl. [1] at ¶¶ 34-60.) Defendants argue that they are not subject to liability for infringement because they had a license to use "Crunk Kings."

11

(Def.'s Br. in Supp. of Mot. to Dismiss ("Def.'s Br.") [10] at 2.) Specifically, defendants contend that plaintiff granted ESHE an express and exclusive license to use "Crunk Kings" in the Term Sheet, the Short Form Agreement, and the Long Form License Agreement. (*Id.*) Alternatively, defendants contend that ESHE had an implied and nonexclusive license to "Crunk Kings" as a result of plaintiff's conduct. (*Id.*) Either type of license would be sufficient to avoid an infringement claim. *See Peter Letterese And Assoc., Inc. v. World Inst. Of Scientology Enter., Inc.*, 533 F.3d 1287, 1308 (11th Cir. 2008) (a license "is an independent affirmative defense to a claim of copyright infringement").

As indicated by defendants' argument, a copyright license can either be exclusive or nonexclusive. *Id.* An exclusive license permits the licensee to use the protected material for a specific purpose, and promises that the same permission will not be given to others. *See* 17 U.S.C. § 204(a). To be valid, an exclusive license must be in writing and must be signed by the copyright owner. *Latimer v. Roaring Toyz, Inc.,* 601 F.3d 1224, 1235 (11th Cir. 2010). Other than the writing requirement, no magic words are needed to give rise to an exclusive license. *Id.* Rather, the written agreement must simply demonstrate an intent by the parties to transfer specific rights associated with the copyright. *Id.*

12

In contrast to an exclusive license, a nonexclusive license to use a copyright may be granted orally, or may be implied from a party's conduct. *Id.* *See also Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 752 (11th Cir. 1997). To determine whether an implied license exists, the Court must focus on objective evidence that reveals the intent of the parties, as well as the scope of the license. *Latimer,* 601 F.3d at 1235. In granting an implied license, the copyright owner "waives his right to sue for copyright infringement while the nonexclusive license is in effect." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 956 (11th Cir. 2009). Nevertheless, an "[i]mplied licenses may be limited and a defendant who exceeds the scope of an implied license commits copyright infringement." *Latimer*, 601 F.3d at 1235.

1. Exclusive License

None of the documents cited by defendants conclusively establishes an express and exclusive license. Plaintiff concedes that he signed the Term Sheet, which contemplates providing ESHE with worldwide distribution rights to "Crunk Kings" for fifteen years. (Pl.'s Resp. to Defs.' Mots. to Dismiss ("Pl.'s Resp.") [15] at 5-6.) However, plaintiff claims that defendants breached the Term Sheet by failing to offer plaintiff a distribution agreement. (*Id.*) Moreover, the Term Sheet states that the "terms and conditions" of ESHE's distribution rights will be "captured in a

more comprehensive long form agreement." (Term Sheet, attached to Def.'s Mot. to Dismiss [10] at Ex. 1.) According to plaintiff, the long form agreement referenced in the Term Sheet was never finalized because the parties could not reach an accord as to its "terms and conditions." (Compl. [1] at ¶¶ 13, 21.) In the absence of a finalized deal, there can be no exclusive license. *See Lyrick Studios, Inc. v. Big Idea Prod., Inc.*, 420 F.3d 388, 393 (5th Cir. 2005)("Section 204(a) requires some language of finality.")

The Short Form Agreement suffers from the same deficiencies. Like the Term Sheet, the Short Form Agreement contemplates further negotiations as to the final "terms and conditions" of ESHE's license. (Short Form Agreement, attached to Def.'s Mot. to Dismiss [10] at Ex. 7.) Moreover, the Short Form Agreement provides that its term period shall begin and end on the dates set forth in the Long Form Agreement. (*Id.*) Thus, even if it is otherwise satisfactory to convey an exclusive license, by its express terms the Short Form Agreement does not take effect until the referenced Long Form Agreement is executed. (*Id.*)

Finally, it is not clear from the materials that are presently before the Court whether plaintiff ever executed the Long Form License Agreement. Plaintiff alleges that he never signed, and did not intend to execute, the Long Form Agreement. (Compl. [1] at ¶¶ 13, 21.) Assuming that his allegations are true, the parties did

14

not reach the finalized deal necessary to an exclusive license. *See Lyrick Studios,* 420 F.3d at 393. Even at this early stage in the litigation, there is some evidence in the record to support plaintiff's claim that he and ESHE were still engaged in contract negotiations months after defendants claim that the Long Form License Agreement was executed. (Pl.'s Resp. [15] at 3-6.)

2. <u>Nonexclusive License</u>

In addition to the documents discussed above, defendants argue that plaintiff's conduct created a license for ESHE to use and distribute "Crunk Kings." (Def.'s Br. [10] at 7.) Specifically, defendants point to the fact that plaintiff's counsel made inquiries concerning ESHE's accounting for royalties connected with "Crunk Kings" in late 2006. (*Id.*) In making these inquiries, plaintiff's counsel acknowledged that ESHE was using "Crunk Kings." (*Id.*) However, plaintiff's counsel did not suggest that ESHE's use was in any way unauthorized. (*Id.*) According to defendants, plaintiff thus implicitly conceded that ESHE had the right to use and distribute plaintiff's work. (*Id.*)

As discussed above, a party's conduct can give rise to a nonexclusive license. *See Jacob Maxwell, Inc.,* 110 F.3d at 752 and *Latimer,* 601 F.3d at 1235. Moreover, the conduct cited by defendants is suggestive of an implied license. Thus, defendants may ultimately prevail on their implied license theory. However,

15

at this point there is no basis in the record for finding an implied nonexclusive license as a matter of law.  As defendants have not conclusively established either an exclusive or nonexclusive license, their motions to dismiss the copyright infringement claims asserted in Counts I, II, and III of the complaint are **DENIED**.

### C.   Counts VI and VII: State and Federal RICO Statutes

In Counts VI and VII of the complaint, plaintiff asserts state and federal RICO claims.[5]  (Compl. [1] at ¶¶ 69-87.)  These claims are predicated on defendants' alleged copyright infringement.  (*Id.*)  In their motions to dismiss, defendants argue that plaintiff's RICO claims must necessarily fail because the copyright infringement claims are invalid.  (Def.'s Br. [10] at 13.)  Having rejected defendants' argument on the copyright infringement claims, the Court likewise **DENIES** defendants' motions to dismiss Counts VI and VII of the complaint.

### D.   Count IV: Fraud

In Count IV of the complaint, plaintiff asserts a claim for fraud.  (Compl. [1] at ¶¶ 61-68.)  Defendants argue that plaintiff's fraud claim should be dismissed because plaintiff has failed to allege fraud with the necessary particularity.  (Def.'s Br. [10] at 10-12.)  The Court agrees.

---

[5]  Plaintiff's complaint does not contain a Count V.  (Compl. [1] at 22-23.)

16

Under Federal Rule 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b).   To satisfy Rule 9(b), plaintiff must identify:

(1) precisely what statements were made  in what documents or oral representations or what omissions were made, and

(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and

(3) the content of such statements and the manner in which they misled the plaintiff, and

(4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

Plaintiff's complaint clearly does not meet the above standard. For the most part, plaintiff relies on vague allegations of a "pattern and practice" of misconduct in support of his fraud claim. (Compl. [1] at ¶ 62.)   Such allegations are insufficient to state a claim for fraud under Rule 9(b).

The closest plaintiff comes to specifying a fraudulent act is his statement that:  "the signature page for the Short Form License Agreement executed by plaintiff was now represented to be the signature page for the entire Long Form License Agreement." (*Id.* at ¶ 31.)   However, that statement does not include all of the details required by Rule 9(b).   *Id.*   In particular, plaintiff does not allege how he was misled by the misstatement or any action that

17

AO 72A
(Rev.8/82)

he took in reliance upon it.   *See Dockens v. Runkle Consulting, Inc.*, 285 Ga. App. 896, 900 (2007)(listing justifiable reliance as one of the five elements of fraud).

Based on plaintiff's own allegations, and the contractual documents that are in the record, it appears that plaintiff and ESHE were at all relevant times engaged in arms length negotiations over the terms and conditions of a proposed licensing agreement for "Crunk Kings." Plaintiff admits that he was represented by legal counsel during the entire course of those negotiations. Particularly given his willing and active participation in the negotiations, plaintiff cannot recast the end result of the process as fraudulent without setting forth any specific allegations concerning the alleged fraud. In short, plaintiff's complaint falls far short of the requirements for pleading fraud under Rule 9(b). Accordingly, defendants' motions to dismiss [10] and [18] are **GRANTED** as to Count IV of the complaint.

### III. <u>Motions to Transfer</u>

As an alternative to dismissal, defendants argue that plaintiff's action should be transferred to California pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). (Def.'s Br. [10] at 14-19.) In support of this argument, defendants cite a forum selection clause in the Long Form License Agreement. (*Id*.) The clause provides for "exclusive jurisdiction of the state and federal courts

sitting in the State of California over any and all matters arising under or related to th[e License] Agreement." (*Id.* at 14)(emphasis in original.)

As mentioned, it is unclear at this stage in the litigation whether the Long Form License Agreement was ever executed. Plaintiff claims that he did not sign, and never intended to execute, the Long Form Agreement. (Compl. [1] at ¶ 13.) Defendants have not produced a signed copy of the Agreement. Moreover, the documents that are in the record tend to support plaintiff's argument that the parties never reached a final accord as to the terms and conditions of the Long Form Agreement. Assuming plaintiff's allegations are true, he is not bound by the terms of the Long Form Agreement, including the forum selection clause. Defendants' motions to transfer [10] and [18] are therefore **DENIED**.

### IV.  **Plaintiff's Motions for Default**

Plaintiff has filed eleven motions requesting that the Clerk enter a default against defendants Fox, Anchor Bay, and CF Entertainment.  (Pl.'s Mots. for Default [16], [17], [21], [24], [32], [36], [37], [38], [50], [51], and [52].)  The Court has not entered a default judgment against any of these three defendants, and each defendant has filed a responsive pleading to plaintiff's complaint.  As such, any entry of default by the Clerk under Fed. R. Civ. P. 55(b)(1) would be void.  *See Direct Mail Specialists,*

*Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 689 (9th Cir. 1988).   To the extent that plaintiff's motions constitute a request for the Court to enter a default judgment against defendants, the motions are **DENIED**.   It is well settled in this Circuit that "defaults are seen with disfavor because of the strong policy of determining cases on their merits."   *Florida Physician's Ins. Co., Inc. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993).   This is particularly true where, as here, plaintiff cannot point to any prejudice as a result of defendants' short delay in responding to the complaint.   *Id.*

## V.   Miscellaneous Motions

Finally, plaintiff has filed motions (1) to transfer this action to Judge Vining, (2) to strike defendants' argument that the Long Form License Agreement was executed, and (3) for Rule 11 sanctions as a result of defendants' "frivolous" arguments concerning the Long Form Agreement.   (Pl.'s Mot. to Transfer [25], Mot. to Strike [27], and Mot. for Sanctions [33].)   All of these motions are based on plaintiff's mistaken belief that Judge Vining held, in his order denying attorneys' fees, that the Long Form Agreement was never executed.   (*Id.*)   In fact, Judge Vining expressly declined to rule on that issue, stating: "The Court is not prepared to make such a ruling."   (Compl. [1], Ex. A at 7.)

20

Accordingly, plaintiff's motions to transfer [25], to strike [27], and for sanctions [33] are **DENIED**.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** defendant Twentieth Century Fox Home Entertainment, LLC's Motion to Dismiss [10], **GRANTS** defendant Twentieth Century Fox Home Entertainment, LLC's Request for Judicial Notice [11], **DENIES** plaintiff's Motions for Judgment by Default and Entry of Default Against CF Entertainment, Inc. [16], [24], [38] and [50], **DENIES** plaintiff's Motions for Judgment by Default and Entry of Default Against Anchor Bay Entertainment, LLC [17], [21], [36] and [52], **GRANTS in part** and **DENIES in part** defendants EntertainmentStudios Home Entertainment, Inc., CF Entertainment, Inc., and Anchor Bay Entertainment LLC's Motion to Dismiss [18], **DENIES** plaintiff's Motion to Transfer [25], **DENIES** plaintiff's Motion to Strike [27], **DENIES** plaintiff's Motions for Judgment by Default and Entry of Default Against EntertainmentStudios Home Entertainment, Inc. [32], [37] and [51], **DENIES** plaintiff's Motion for Rule 11 Sanctions [33], and **DENIES** plaintiff's Objection to Requests for Leave of Absence and/or Reconsideration [49].

21

SO ORDERED, this <u>8th</u> day of September, 2011.


<u>/s/ Julie E. Carnes</u>
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)